487 So.2d 777 (1986)
Charles T. RAWSON and Rebecca A. Rawson
v.
Michelle L. JENNINGS, John R. Jennings, State Farm Mutual Automobile Insurance Company and Shelter Mutual Insurance Company.
No. 85-184.
Court of Appeal of Louisiana, Third Circuit.
April 25, 1986.
Eugene J. Sues of Gold & Simon, for defendants-appellants.
Roy S. Halcomb, Jr. of Broussard, Bolton & Halcomb, Alexandria, for plaintiffs-appellees.
Before CHEHARDY, BOWES and GAUDIN, JJ. Pro Tem.
LAWRENCE A. CHEHARDY, Judge Pro Tem.
This is a personal injury suit arising from an automobile collision. The only issue before us on appeal is the amount of uninsured motorist coverage provided by the plaintiff's insurance policy. The key determination we must make is whether the insurer sufficiently proved the insured had made written selection of uninsured motorist coverage in an amount less than his bodily injury liability limits.
Charles and Rebecca Rawson, the plaintiffs, were severely injured in an intersectional automobile collision on October 8, 1982 in Alexandria, Louisiana. The other vehicle was owned by defendant John Jennings and was being driven by his minor daughter, Michelle Jennings. It was stipulated at trial that Michelle Jennings was solely at fault in causing the accident.
Rebecca Rawson settled all her claims prior to trial and those were never at issue. Similarly, Charles Rawson settled his claims against the Jenningses and their insurer, State Farm Mutual Automobile Insurance Company, prior to trial. He received $25,000 from State Farm, its policy liability limits. In addition he received $10,000 from his own automobile insurance carrier, Shelter Mutual Insurance Company, under the uninsured motorist provisions of his policy.
(In its brief, Shelter remarks that Charles Rawson also received $10,000 from John Jennings; however, that is not mentioned in the district court's reasons for judgment and there is nothing to confirm it in the record. In any event that would not *778 affect his right to recover under the uninsured motorist provisions of his own policy.)
The major issue presented at trial was whether Mr. Rawson was entitled to an additional $15,000 payment from Shelter, under the statutory provision that uninsured motorist coverage limits are presumed to be equal to bodily injury (BI) liability limits of a policy absent a written rejection or written selection of lower limits for the uninsured motorist coverage.
(An additional issue was whether Rawson's injuries were worth more in damages than he had already received in the settlements. The trial judge concluded that Rawson suffered damages exceeding $50,000the total amount available from the insurers, if Shelter's uninsured motorist limits are considered to be $25,000. Shelter does not take issue with the quantum determination.)
The governing law is LSA-R.S. 22:1406(D)(1)(a):
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state * * * unless coverage is provided therein * * *, in not less than the limits of bodily injury liability provided by the policy, * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."
Charles Rawson first applied for automobile liability insurance with Shelter on May 7, 1981, with bodily injury liability limits of $25,000 per person and $50,000 per accident. The policy term was six months. On the reverse side of the application form were printed the following questions, with the answers written in by hand:
"5. a. Do you want Uninsured Motorist coverage? NO
b. Do you want Uninsured Motorist limits equal to Bodily Injury limits? NO
* * * * * *
NOTE: The coverages shown on the front side should coincide with these answers."
On the front side of the policy the Uninsured Motorists Limits space was blank. The application form was signed by Charles Rawson. It is uncontested that this qualifies as a written rejection of uninsured motorist coverage under the statute.
On October 19, 1981 Rebecca Rawson signed an application for a change in the policy. In a box entitled "SHOW ALL COVERAGES WANTED ON POLICY," under "Limits," "$25/50/25" was written next to "B.I.P.D." Next to "U.M." under "Limits" was written "$10/20." On the same line was a hand-drawn arrow pointing to the U.M. limits with the word "add" handwritten next to it. Unlike the policy application form, the policy change form contained no questionnaire regarding uninsured motorist coverage.
The policy was renewed on May 3, 1982, without additional changes, effective through November 3, 1982. (The accident took place on October 8, 1982.)
Shelter contended this was a written selection of lower uninsured motorist limits *779 as required by the statute, so that Rawson's uninsured motorist limits are $10,000 per person and $20,000 per accident. Accordingly, Shelter asserted, Rawson cannot recover more than the $10,000 Shelter has already paid him.
In its reasons for judgment, the trial court noted that neither the Rawsons nor Roger Black (their insurance agent) nor Nancy Kelone (Black's employee who had filled out the change order) could recall any discussions whatsoever regarding the uninsured motorist coverage at the time of the October 1981 change order. Kelone testified the form had probably been prepared before Mrs. Rawson came to the office to sign it. Both Black and Kelone testified they had no knowledge of any writing whereby the Rawsons were offered or rejected uninsured motorist coverage equal to their bodily injury limits at the time coverage was added to the policy.
Shelter argued that Rawson was informed of his option to select lower uninsured motorist limits at the time of his initial written rejection of uninsured motorist coverage. The defendant contended this barred his recovery because the statute states that uninsured motorist coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.
The trial court, however, concluded that the initial rejection of uninsured motorist coverage would not carry over as a rejection in the policy renewals due to the subsequent addition of uninsured motorist coverage at the time of renewal. The court cited Breaux v. Government Emp. Ins. Co., 373 So.2d 1335 (La.App. 1 Cir.1979), which held that an initial rejection of uninsured motorist coverage was vitiated by a subsequent inclusion of that coverage in a renewal policy. By implication, the court ruled that the Rawsons were not afforded an option to "select" lower limits when the change order instituting uninsured motorists coverage was made.
We find no error in this ruling. We agree that Rawson's initial rejection of uninsured motorist coverage was vitiated by the subsequent change order instituting the coverage. As stated in the Breaux case, "the only way an insured can exercise [the] option [given him by the statute] is when he is informed of his option privilege by the insurer." Id., at 1338. Barring any evidence that the Rawsons made an informed selection of the $10,000/$20,000 limits noted on the change form, the law mandates the uninsured motorist coverage limits be equal to the bodily injury liability coverage limits.
This case is similar to Aramburo v. Travelers Ins. Co., 426 So.2d 260 (La.App. 4 Cir.1983), in which the court ruled that the automobile insurer failed to establish that the insured selected uninsured motorist coverage limits less than the amount of the bodily injury coverage, because the application for insurance did not afford an opportunity to "select lower limits." It merely offered the insured a choice of either selecting $5,000/$10,000 limits or rejecting coverage. The court stated,
"As a matter of law, no one can `select lower limits' unless higher limits are also available. Because no other limits were offered her, we reject the contention that our applicant `selected' 5/10 coverage by executing the application in evidence." Id., at 261, 262.
For the foregoing reasons, therefore, the judgment of the district court is affirmed. All costs are assessed against appellant.
AFFIRMED.