509 So.2d 651 (1987)
Charles M. McCALL, et al., Plaintiffs-Appellants,
v.
Nhuan V. NGUYEN, et al., Defendants-Appellees.
No. 86-506.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1987.
Jones, Jones and Alexander, J.B. Jones, Jr., Cameron, for plaintiffs-appellants.
Jones, Tete, et al., Kenneth R. Spears, Lake Charles, for defendants-appellees.
Before STOKER, LABORDE and YELVERTON, JJ.
*652 STOKER, Judge.
The plaintiffs filed suit against the defendant, Hartford Casualty Insurance Company, for uninsured motorist benefits due under a policy of insurance issued to their mother, Diane McCall.[1] Mrs. McCall died as a result of injuries sustained in an automobile collision which occurred on August 25, 1984. The driver of the other vehicle involved was determined to have been underinsured within the terms and provisions of the policy of insurance issued to Mrs. McCall. The limit of the uninsured motorist coverage, as shown on the policy, is $10,000 for each accident. The plaintiffs originally made demand for the $10,000 policy limit. At some point in the litigation a question arose concerning the validity of a selection of a lower limit. The limit of bodily injury liability was $25,000. The defendant tendered the undisputed portion in the amount of $10,000. The trial court rendered judgment in favor of the defendant, finding a valid selection of the lower limit. The plaintiffs have appealed this judgment.
The sole issue presented for review is whether there was a valid selection, in writing, of a lower uninsured motorist limit.
We affirm the judgment of the trial court. As part of our reasoning, we adopt herein the trial court's concisely written reasons for judgment.
Those reasons are as follows:
"The single question presented to the court here is what amount of uninsured motorist coverage was provided by a policy issued by defendant Hartford Casualty Insurance Company to decedent, Diane McCall. There is no dispute as to facts and the question is one of contract and statutory interpretation.
"Mrs. McCall purchased an automobile liability insurance policy from the defendant and said policy provided that the limits of bodily injury liability would be $25,000.00. Under L.R.S. 22:1406, such a policy must provide uninsured motorist coverage in not less than the same amount unless the purchaser `rejects in writing the coverage or selects lower limits'. The statute does not provide specific mechanics for the rejection or selection process. Here, Mrs. McCall signed a policy application and on the application form a blank space that was provided for U.M. Coverage amount had been filled in for $10,00.00. On the second page, a paragraph appeared which read as follows:
"`Uninsured motorist coverage has been explained to me and I reject coverage (applicant's initials): ______ (not applicable in all states).'
There is no separate acknowledgement of this paragraph in writing from Mrs. Call, her only signature being that one which is referred to on the first front page. The blank space provided was left blank.
"The question focuses on whether or not Diane McCall made an effective selection of the lower limits which are seen on the application page. As was said in Aramburo vs. Travelers Insurance Company, 426 So.2d 260, [261] (La.App. [4th Cir.] 1983), [writ denied 433 So.2d 161 (La.1983)]:
"`It remains, however, the insurer's burden to prove either rejection or else selection of lower limits if the insurer is to escape the statutory obligation that its policy shall contain U.M. Coverage equal in amount to its bodily injury coverage.'
"In the Aramburo case, the court found that the defendant had not carried its burden because the forms supplied there only provided for the rejection of U.M. Coverage or the limited selection of coverage in the amount of `5-10'. The fact that the company's form did not provide other available limits prompted the court in that case to say `as a matter of law, no one can "select lower limits" unless higher limits are also available.' In our present case, the form used is not stricken with that infirmity. The blank line on the Hartford form could have been filled in with whatever amount desired *653 by the applicant. The rejection clause provided on the second page of the application was not used and, consequently, it should not have been initialed or signed by the applicant because that would not have expressed her intent. The absence of any writing on or about the rejection clause is consistent with the front page of the application.
"Neither the jurisprudence nor the applicable statute provide any formality as to what kind of writing is required to make the selection of U.M. Coverage. The Court holds here that the signing of an application form, as was done in this case, meets the requirements of `writing' under the present state of the law. The defendant has met its burden of proving a written selection of the lower limits of U.M. Coverage provided by the policy."
In the Aramburo case, referred to by the trial court in its reasons for judgment, the limits for uninsured motorist coverage, "5/10" were printed on the form together with the amount of the premium for that coverage. Consequently, there is logic in the trial court's distinction between the application form in Aramburo and the one which figures in this case. Here, someone had to select the $10,000 uninsured motorist policy limit because the blank space or block provided for the limit was filled in by hand in ink. Mrs. McCall signed the application. Reasonable construction of the signing of the application by Mrs. McCall would dictate that she be deemed to have made the selection of an uninsured motorist limit of $10,000.
At oral argument the plaintiffs urged that mere selection is not enough. They argue that the selection must be an informed selection or must constitute a knowing waiver of the option as to the amount of insurance coverage. Plaintiffs cited to us the cases of Rawson v. Jennings, 487 So.2d 777 (La.App. 3d Cir.1986) and Cheadle v. Francois, 470 So.2d 255 (La.App. 4th Cir.1985). In the Cheadle case the concurring judge made reference to absence of a knowing waiver involving an application form in a case where a summary judgment in favor of an insurer was reversed. In Rawson v. Jennings, supra, a panel of judges of the Court of Appeal for the Fifth Circuit sat as judges pro tempore of this court of appeal. In Rawson the insured, Charles Rawson, initially rejected uninsured motorist coverage, but several months later signed an application for change in the policy in which the amount of each coverage requested, designated as limits, was written in by hand including "$25/50/25" for "B.I.P.D." and "$10/20" for "U.M." The Rawson panel held that:
"Barring any evidence that the Rawsons made an informed selection of the $10,000/$20,000 limits noted on the change form, the law mandates the uninsured motorist coverage limits be equal to the bodily injury liability coverage limits."
We presume that the terms "informed selection" and "knowing waiver" mean evidence in some form indicating that, at the time of the selection, the insured knew or was informed that (for a premium) state law required that the insured be permitted to select uninsured motorists limits equal to the coverage for bodily injury liability. Under that interpretation an otherwise valid selection of uninsured motorist coverage of less than bodily injury coverage is not enough.
The Rawson panel likened the Rawson situation to the situation in Aramburo, but we think the distinction made by the trial judge in this case quoted above is valid. The question is not controlled by Aramburo. Aramburo provided for one option only. This concept has been considered in this court with reference to rejection of uninsured motorist coverage. In Rushing v. Frazier, 477 So.2d 1317 (La.App. 3d Cir. 1985), the issue of existence of a "knowing and intelligent" rejection of uninsured motorist coverage was considered. The panel in that case concluded that an insurer was under no obligation to try to explain uninsured motorist coverage or any other coverages in automobile policies. The insured's rejection of uninsured motorist coverage on his application form was upheld despite the insured's claim that he "never knowingly and voluntarily" waived the right to have uninsured motorist coverage.
*654 The question before us is whether the statute, LSA-R.S. 22:1406(D)(1)(a), embodies a requirement for evidence of an "informed selection" or "knowing waiver." In pertinent part the statute provides:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
"(1)(a) No automobile liability insurance coverage liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state * * * unless coverage is provided therein * * * in not less than the limits of bodily injury liability provided by the policy * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."
As we read the statute, it does not provide for proof that the selection of "lower limits" was made with knowledge of the statutory option written into the statute. If the evidence of a selection is in the form of a written application, such as was made in this case, it is sufficient if the application shows on its face that an unrestricted choice of limits was made. A printed form with blank spaces or blocks permits the applicant to request any amount of lower limits, or the applicant might choose the same limits as are chosen for bodily injury liability. A blank space filled in with handwritten figures is clear indication of a choice. See Moore v. Young, 490 So.2d 519 (La.App. 4th Cir.1986). In this case Mrs. McCall signed the application which is a clear indication that she selected the single limit of $25,000 for bodily injury liability coverage and uninsured motorist coverage with a limit of $10,000. See Ryan v. State Farm Mut. Auto. Ins., 437 So.2d 898 (La. App. 2d Cir.1983). The case before us presents a distinctly different situation from that presented in Carlson v. Safeco Ins. Co., 499 So.2d 664 (La.App. 3d Cir. 1986), writ denied, 503 So.2d 477 (La.1987). There we held that a selection of lower limits could not be made without affirmative action on the part of the insured. The insured's application could not reflect a choice of limits or a rejection of uninsured motorist coverage by reference to the declaration page of the policy which would be filled out by the insurer.
We hold that all the statute requires is that evidence of selection of limits lower than the limits of bodily injury coverage show that an unrestricted option was available to the applicant. We are not concerned here with the question of whether the selection is required to be in writing because it was in writing.[2] A blank space or block filled in with a figure in handwriting is such evidence. The burden of proof to show that the applicant was not given a free option up to the bodily injury limits, or was restricted as in Aramburo, would be on the parties claiming under the uninsured motorist coverage provisions of the policy.
For the reasons stated herein, the judgment of the trial court is hereby affirmed. The costs of this appeal are assessed to the plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Numerous other parties were joined in the suit as defendants, all of whom have had the claims against them compromised and dismissed. Hartford alone remained in the litigation.
[2] See International Ins. Co. v. Masur, 404 So.2d 1313 (La.App. 2d Cir.), writ denied, 407 So.2d 733 (La.1981), and A.I.U. Ins. Co. v. Roberts, 404 So.2d 948 (La.1981).