571 So.2d 861 (1990)
Joseph D. BERTRAND, et ux., Plaintiffs-Appellants,
v.
SHELTER GENERAL INSURANCE COMPANY, Defendant-Appellee.
No. 89-601.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
Jacque B. Pucheu, Jr., Eunice, plaintiffsappellants.
Voorhies & Labbe, E. Gregory Voorhies, Lafayette, for defendant-appellee.
Before STOKER, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
The sole issue raised in this case is whether or not there was a valid rejection of uninsured motorist (UM) coverage under LSA-R.S. 22:1406(D). The trial court found that there was a valid rejection of UM coverage and granted summary judgment in favor of defendant, Shelter General Insurance Company. Plaintiffs, Joseph D. Bertrand and Dora Miller Bertrand, now appeal that judgment. We find no error. We affirm.

FACTS
Plaintiffs instituted this action for damages for the wrongful death of their major daughter occurring as a result of an automobile accident. Named as defendant in this matter is Shelter General Insurance *862 Company, who, plaintiffs allege, had a policy of UM coverage in effect at the time of their daughter's accident. Defendant answered the plaintiffs' petition with a general denial of the allegations contained therein. Subsequently, defendant filed a motion for summary judgment contending that although it had an automobile liability policy with Mr. Bertrand in effect at the time of the accident, this policy did not afford UM coverage, as Mr. Bertrand signed a valid waiver of UM coverage on the insurance policy application form.
The automobile insurance application form which defendant provided Mr. Bertrand was filed into the record. In the vehicle description section Mr. Bertrand listed a 1973 Kenworth truck bearing the vehicle identification number 222996. Question number 6 on the application asked: "6. Do you want Uninsured Motorist coverage? (Not applicable in IL, KS, MO)." Mr. Bertrand answered this question in the negative. Question number 7 on the application asked: "Do you want Uninsured Motorist limits equal to Bodily Injury Limits?" to which Mr. Bertrand again responded in the negative.
Mr. Bertrand filled out an application to transfer coverage to a 1981 International truck bearing the vehicle identification number IHTL23270BGA21711. Subsequently, Mr. Bertrand filled out another application to transfer coverage, this time to a 1982 International truck bearing the vehicle identification number IHTD21376CGB1094. On the same date, a 1982 Timpi trailer bearing the vehicle identification number ITDM4002XCB53550 was added on to the coverage. All three of these applications are present in the record. The final application for transfer of coverage filled out by Mr. Bertrand provides as follows:
*863 
As can be plainly seen, Mr. Bertrand rejected UM coverage and responded negatively to the question of whether or not he wanted UM limits equal to the bodily injury limits. It can also be clearly seen that the application provides blank spaces adjacent to the categories of coverage to be filled in with the applicant's requested amounts of coverage. There is no amount filled in next to the UM categories of coverage. Mr. Bertrand's signature appears at the bottom of the application form.

*864 UM COVERAGE
With regard to UM coverage, LSA-R.S. 22:1406(D)(1)(a) provides:
"D. The following provision shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy,... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates."
In Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987), the Louisiana Supreme Court explained the purpose and effect of UM coverage in the following terms:
"In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. A.I.U. Ins. Co. v. Roberts, 404 So.2d 948 (La.1981); Breaux v. Government Employees Ins. Co., 369 So.2d 1335 (La.1979). The object of the statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983); Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224 (La.1982). Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982).
To carry out this objective of providing reparation for those injured through no fault of their own, this Court has held the statute is to be liberally construed. Hoefly, supra. Thus, the requirement that there be UM coverage is an implied amendment of any automobile liability policy, even one which does not expressly address the subject matter, as UM coverage will be read into the policy unless validly rejected. A.I.U. Ins. Co., supra.
UM coverage is determined not only by contractual provisions, but also by applicable statutes. In the absence of a specific rule, general insurance law governs. A.I.U. Ins. Co., supra. The liberal construction given the UM statute requires the statutory exceptions to the coverage requirement be interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable. Dorsey v. Board of Trustees, State Employees Group Benefits Program, 482 So.2d 735 (La.App. 1st Cir.1985), writ denied, 486 So.2d 735 (La.1986); Landry v. La. Hosp. Service, Inc. 449 So.2d 584 (La.App. 1st Cir.1984); Stewart v. La. Farm Bureau Mutual Ins. Co., 420 So.2d 1217 (La.App. 3d Cir.1982)."
The case law has also recognized that it remains the insurer's burden to prove either rejection or else selection of lower limits if the insurer is to escape the statutory obligation that its policy shall contain UM coverage equal in amount to its bodily injury coverage. Roger, supra; McCall v. Nguyen, 509 So.2d 651 (La.App. 3d Cir. 1987); Aramburo v. Travelers Insurance Co., 426 So.2d 260 (La.App. 4th Cir. 1983), writ denied, 433 So.2d 161 (La.1983), modified, 438 So.2d 274 (La.App. 4th Cir.1983), writ denied, 443 So.2d 1110 (La.1983).
In the instant matter, plaintiffs concede that Mr. Bertrand signed the form which contained a rejection of UM coverage; however, they contend that the rejection is invalid because Mr. Bertrand was never offered in writing UM limits in any *865 amount other than an amount equal to bodily injury limits. In essence, plaintiffs argue that LSA-R.S. 22:1406(D)(1)(a) requires that the form Mr. Bertrand signed must indicate that there is UM coverage available in limits less than the full bodily injury limits. The plaintiffs assert that since the form Mr. Bertrand signed only offered outright rejection of UM coverage or purchase of UM limits equal to bodily injury limits, it is invalid on its face.
This identical issue was raised in a case recently decided by this court. Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3d Cir. 1989), writ denied, 559 So.2d 138 (La. 1990). The facts in Guilbeau are remarkably similar to those in the case at bar. In Guilbeau, the plaintiff brought suit against her UM carrier seeking to recover damages for the death of her daughter, who was struck by an alleged uninsured motorist. The trial court granted the UM carrier summary judgment on the ground that the plaintiff rejected in writing UM coverage on the insurance application. As in the case sub judice, the application for insurance provided the insured the opportunity to accept or reject UM coverage. The application also contained blank spaces by the categories of coverage to be filled in with the amount of coverage requested. The UM coverage blanks were left unfilled. Plaintiff argued that although she signed the rejection it was invalid because it did not present her with all of the available options under LSA-R.S. 22:1406(D)(1)(a). She contended that for the form to be valid it had to explain to her that she had the option of selecting UM coverage in the same limits as liability coverage, lower limits than liability coverage or rejecting coverage completely. Plaintiff relied on some of the same cases to support her argument as do the plaintiffs in this case. This court rejected the plaintiff's argument and affirmed the trial court's grant of summary judgment. Quoting from the Supreme Court's decision in Roger, this court determined that the following was required to validly reject UM coverage:
"`... to effect a valid rejection of UM coverage under LA.R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer.'"
Guilbeau, at 1080. It was also recognized that the rejection must be in writing and must be signed by the named insured or his legal representative. In light of these requirements, this court found that plaintiff's signature next to the rejection clause constituted a clear and unequivocal expression of her intent to reject UM coverage.
Similarly, we find that Mr. Bertrand's negative response to the questions: "Do you want Uninsured Motorist coverage?" and "Do you want Uninsured Motorist limits equal to Bodily Injury Limits?" constitutes a clear and unequivocal expression of his intent to reject UM coverage. We determine that the rejection is in accordance with the requirements of LSA-R.S. 22:1406(D)(1)(a). In fact, in Rawson v. Jennings, 487 So.2d 777 (La.App. 3d Cir.1986), this court found that the same language qualified as a written rejection of UM coverage. This court went on to ultimately hold in that case that the initial rejection of UM coverage was vitiated by a subsequent change order which requested coverage. We are not faced with a similar problem here, as Mr. Bertrand never requested UM coverage in any of the application for change forms he signed.
Plaintiffs cite several cases to support their position that the rejection of UM coverage in this case was ineffective because Mr. Bertrand was never informed of his option to select UM coverage in limits less than the bodily injury limits, e.g. Carlson v. Safeco Insurance Co., 499 So.2d 664 (La.App. 3d Cir.1986), writ denied, 503 So.2d 477 (La.1987); Cheadle v. Francois, 470 So.2d 255 (La.App. 4th Cir.1985); Aramburo, supra. We have reviewed these cases and find them to be inapposite. All of these cases dealt with situations where an insured purchased UM limits less than the bodily injury limits and then later claimed that the selection was invalid because he was not informed that there was an option to purchase higher limits. However, *866 the issue in the case before us now is not whether Mr. Bertrand validly selected lower limits, but whether Mr. Bertrand validly rejected UM coverage. We can find nothing in the statute or the jurisprudence which would require that for a rejection of UM coverage to be valid, an insured must be informed of his option to select lower limits.
Plaintiffs lastly argue that it was error for the trial court to grant summary judgment to defendant because there is a genuine issue of material fact as to whether or not UM coverage was explained to Mr. Bertrand. In his affidavit, Mr. Bertrand states that the insurance agent, Gerald Doumite, never explained to him the nature of UM coverage, nor did Mr. Doumite explain that he could select such coverage in an amount less than bodily injury limits. Gerald Doumite, in his affidavit, states that he informed Mr. Bertrand of his right to have UM coverage equal to liability limits, select lower limits, or reject UM coverage altogether. Mr. Doumite further states that Mr. Bertrand elected to reject UM coverage outright.
In Rushing v. Frazier, 477 So.2d 1317 (La.App. 3d Cir.1985), reversed, 480 So.2d 736 (La.1986) and 483 So.2d 1011 (La.1986) this court held that there is no fiduciary duty owed by the insurer of its agent to explain all the legal ramifications of UM coverage. Rushing was reversed and remanded by the Louisiana Supreme Court, and, as of the time of this writing, there has been no published decision in that case. The reversal of Rushing has no bearing on this case. The plaintiffs in Rushing alleged that they were confused as to the meaning and purpose of UM coverage. There is no such allegation in this case. In fact, plaintiffs allege only that Mr. Bertrand was unaware that lower limits could be selected and not that he was unaware of the nature of UM coverage in general. Since we have decided that Mr. Bertrand did not have to be apprised of the option to select lower limits for there to be a valid outright rejection of UM coverage, plaintiffs' argument does not raise a genuine issue of material fact.
For the reasons expressed herein, we affirm the trial court's grant of summary judgment to defendant. Plaintiffs are cast for all costs.
AFFIRMED.