597 So.2d 1258 (1992)
Nelson FONTENOT & Mary Ivy Fontenot, Plaintiffs-Appellees,
v.
CHAMPION INSURANCE COMPANY, Defendant-Appellant.
No. 90-1246.
Court of Appeal of Louisiana, Third Circuit.
April 16, 1992.
Dauzat, Falgoust Ferry L. Falgoust, Opelousas, for defendant/appellant.
J. Blake Deshotels, Ville Platte, for plaintiffs/appellees.
Before DOUCET and KNOLL, JJ., and COREIL[*], J. Pro Tem.
JOSEPH E. COREIL, Judge Pro Tem.
The sole issue herein is whether or not Ricky Fontenot, the deceased son of plaintiffs-appellees, Nelson and Ivy Fontenot, validly rejected uninsured motorists coverage in a policy issued to him by defendant-appellant, *1259 Champion Insurance Company (Champion).[1]
After trial on the merits, the trial court found the rejection of Ricky Fontenot invalid for two reasons. First, the court ruled that, because the insured was a first-time buyer, Champion had a higher burden than customary to ascertain that the insured understood the ramifications of rejecting UM insurance.
Additionally, the trial court held that Ricky Fontenot's rejection of UM coverage was invalid because Champion only offered him UM coverage in the same amount as the liability coverage purchased, i.e., 10/20 coverage, rather than offering him a selection of higher or lower limits.[2]
LIGA, standing in the shoes of Champion, appeals the judgment of the trial court, contending that the trial court was incorrect as a matter of law. We agree and reverse the judgment of the trial court.

FACTS
Ricky Fontenot, the insured herein, was killed in an auto accident on July 17, 1987. Prior to the accident, on May 23, 1987, Nelson Fontenot went with Ricky, a major, to purchase liability insurance for Ricky's first automobile from Dupuis Insurance in Mamou, Louisiana.
The agent, John Dupuis, testified that due to Ricky's limited driving experience, the only insurance company which would issue a liability policy to Ricky was Champion. Champion only offered liability insurance in the lowest statutory amount required by law, 10/20 coverage, and similarly, only offered UM coverage in the same amount, 10/20.
Dupuis testified that, although he had no independent recollection of Ricky and his father[3], he uses a standard example in explaining UM coverage to his clients to make sure they understand it.
Nelson Fontenot testified that, in response to a question from Ricky as to whether Ricky needed UM coverage, Nelson incorrectly advised his son that UM coverage was for "other vehicles" and that Ricky didn't need it.
Nelson testified that the agent did not correct him when he incorrectly explained UM coverage to his son and that the agent did not ask if Ricky wanted UM coverage.[4]
Dupuis testified that he filled out Ricky's insurance application as he talked to Ricky. He stated that he offered liability, UM, and medical coverage; that Ricky purchased liability and medical coverage and rejected UM.
Ricky's father testified that Ricky could read and write. Ricky signed the application twice, once as to the general application and once to reject UM coverage.

ISSUES
Does an agent have a higher duty to a first-time buyer than other clients to make certain that they understand the meaning of UM insurance and the ramifications of rejection?
John Dupuis testified that he explains UM coverage to his clients and makes certain that they are aware that when they sign the rejection form that they are rejecting UM coverage.
The Louisiana Supreme Court recently stated, in Henson v. Safeco Ins. Companies, 585 So.2d 534, 539 (La.1991), that in order for a rejection of UM coverage to be valid, "the insurer must place the insured in a position to make an informed rejection of UM coverage." In Henson, supra, the Supreme Court found the rejection invalid because the rejection language was not conspicuous on the application form and because the insured did not affirmatively *1260 make any specific indications regarding the rejection of UM coverage.
The Supreme Court in Henson cited Oncale v. Aetna Cas. & Sur. Co., 417 So.2d 471 (La.App. 1 Cir.1982), as involving a rejection form which detailed clearly the UM options in laymen's terms and involved facts wherein a rejection of UM was held valid. In Oncale, the plaintiff argued that she did not know she was rejecting UM when she signed the rejection form. The Court found the rejection valid insofar as the form was "self-explanatory and was not confusing or misleading in the least." Oncale, at page 475.
The Oncale court continued on page 475, as follows:
"A person who signs a written document is presumed to have knowledge and understanding of that which he signs." (citations omitted)
Likewise, we find that the evidence shows that Dupuis explained UM coverage to Ricky and made him aware of the consequences of signing the rejection form. The form itself was not confusing or misleading. (See Exhibit A.) The agent is not responsible if Ricky chose to heed his father's incorrect advice rather than his insurance agent's advice. Ricky was in a position to make an "informed rejection" of UM coverage.
We also note that Ricky elected to purchase the medical coverage option. This reveals that he was not blindly signing forms without considering his options. We find no authority for the contention that Dupuis had a more burdensome duty to this insured because he was a first-time buyer. Conversely, we will not presume that an experienced buyer understands UM coverage and reduce an agent's burden to same accordingly.
Next, we will determine whether an insurer that offers only the minimum level of liability insurance must also offer UM coverage in amounts less than the bodily injury liability limits in order to make a UM rejection valid.
The trial court reasoned that because only 10/20 UM coverage was offered, rather than additional higher and lower limits, the UM rejection was invalid.
At the time of Ricky's application for insurance, La.R.S. 22:1406 D(1)(b) provided for an insured to increase his UM coverage to any amount with the insured's written request[5]. There is no jurisprudence that reflects that an option to purchase higher UM limits than the policy's bodily injury liability was necessary prior to a valid rejection. Additionally, there is no evidence that Ricky requested, in writing or otherwise, increased UM protection. Therefore, we find no merit in the contention that Champion was compelled to offer higher UM limits in order for Ricky's UM rejection to be valid.
It is the insurer's burden to prove rejection of UM coverage in order to escape the statutory obligation that its policy contain UM coverage equal in amount to its bodily injury coverage. See Desormeaux v. Lalonde, 578 So.2d 226 (La.App. 3 Cir. 1991), writs denied, 581 So.2d 705, 706 (La. 1991).
Recently, the Louisiana Supreme Court, in Henson v. Safeco, Ins. Companies, supra, reviewed the UM coverage rejection issue and its jurisprudential history, as follows:
"The right to reject UM coverage and the method of rejection have been addressed several times by the Louisiana Legislature. The original UM statute, adopted by La.Acts 1962, No. 187, required UM coverage in every automobile liability insurance policy issued in Louisiana, in an amount not less than the limits mandated for bodily injury damages by the Motor Vehicle Safety Responsibility Law. The initial statute also gave the named insured the right to reject UM coverage.
When the mandatory limits for UM coverage were increased in 1972, the insured was also given the option of selecting lower limits. La.Acts 1972, No. 137.

*1261 La.Acts 1974, No. 154, amended the statute to require that the insurer provide UM coverage `in not less than the limits of bodily injury liability provided in the policy,' unless the insured rejected the coverage or selected lower limits. Although this statute did not require a rejection in writing, the courts interpreted the statute, by looking to general insurance laws, as requiring a written rejection. See American International Insurance Co. v. Roberts, 404 So.2d 948 (La.1981); LeBoyd v. Louisiana Transit Co., 375 So.2d 749 (La.App. 4th Cir.1979).
La.Acts 1977, No. 438, specifically required that the rejection of UM coverage be in writing, adopting the statutory language at issue in the present case."
Id., at page 537.
At the time of the signing of the application in this case, La.R.S. 22:1406 D(1)(a), concerning rejection of UM coverage, provided:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits.... Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto....
(emphasis added)."
In Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987), the Louisiana Supreme Court set forth the requirements to effect a valid rejection of UM coverage, as follows:
"In order to have a valid rejection, the rejection must be in writing, and signed by the `named insured' or his `legal representative.'
* * * * * *
Accordingly, to effect a valid rejection of the UM coverage under La.R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection." 513 So.2d at 1131, 1132.
This Court was recently faced with similar issues in Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3 Cir.1989), writ denied, 559 So.2d 138 (La.1990), and in Bertrand v. Shelter General Ins. Co., 571 So.2d 861 (La.App. 3 Cir.1990), both involving motions for summary judgment by the insurers.
In Guilbeau, the plaintiff urged that the rejection was invalid because the form failed to explain the options of UM coverage in the same limits as liability coverage, lower limits than liability coverage, or rejection of coverage entirely. She argued that she was not fully informed of her options under the law. Likewise, she testified that she did not recall UM being offered to her. This Court affirmed the trial court's grant of summary judgment in favor of the insurer on the basis that the rejection clause which she signed was a clear and unequivocal expression of her intent to reject UM coverage as of the date of her application for liability insurance.
*1262 Again, in Bertrand, supra, the plaintiffs contended that their rejection of UM coverage was ineffective because the insurer never informed them of the option to select UM coverage in limits less than the bodily injury limits. They claimed that because the form Bertrand signed offered only rejection of UM coverage or selection of UM limits equal to bodily injury limits, it was invalid on its face.
This Court, in finding Bertrand's rejection a clear and unequivocable expression of his intent to reject UM coverage, stated, as follows:
"We can find nothing in the statute or the jurisprudence which would require that for a rejection of UM coverage to be valid, an insured must be informed of his option to select lower limits."

Bertrand, at page 866.
In Bertrand, as in Guilbeau, and the case sub judice, the plaintiff additionally argued that the insurance agent did not explain UM coverage or that he could select such coverage in an amount less than bodily injury limits. The Bertrand court found that this allegation did not raise a genuine issue of material fact insofar as the issue was whether or not the insured validly rejected UM coverage, not whether there had been a valid selection of lower limits. We held that the insured did not have to be apprised of the option to select lower limits for there to be a valid outright rejection of UM coverage.

CONCLUSION
Based upon the foregoing, we find that Ricky Fontenot's unequivocal expression of his intent to reject uninsured motorist coverage was valid and was not rendered ineffective by the insurer's failure to offer UM coverage in limits less than the minimum bodily injury limits. As such, we reverse the judgment of the trial court and render judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Louisiana Insurance Guarantee Association and Champion Insurance Company, in liquidation, and against Nelson Fontenot and Mary Ivy Fontenot, dismissing their suit against Louisiana Insurance Guarantee Association and Champion Insurance Company.
Costs of these proceedings, both trial and appellate, shall be paid by plaintiffs-appellees, Nelson Fontenot and Mary Ivy Fontenot.
REVERSED AND RENDERED.
*1263 
NOTES
[*] JUDGE JOSEPH E. COREIL, Retired, participated in this decision by appointment of the Louisiana Supreme Court, as Judge Pro Tempore.
[1] Champion is now represented by LIGA (Louisiana Insurance Guarantee Association).
[2] In this case, a selection of lower limits would have had to be in an amount less than the statutory lower limit of liability insurance, e.g., 5/10 UM coverage.
[3] Nelson Fontenot did not recognize John Dupuis at trial either.
[4] This is inconsistent with his testimony that Ricky asked his father if he should purchase UM coverage.
[5] The law has now changed, limiting UM coverage increases "to any available limit up to the bodily injury liability coverage limits afforded under the policy." La.R.S. 22:1406 D(1)(b).