Troy LeBOEUF

v.

**PLANET INSURANCE COMPANY and Reliance National Indemnity Company.**

**Civil A. No. G–95–198.**

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 25, 1996.

Steve Waldman, Waldman & Grossman, Houston, TX, for plaintiff.

Kyle L. Jennings, Beirne Maynard & Parsons, Houston, TX, for defendants.

### ORDER GRANTING PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

Presently before the Court are the Plaintiff's Motion for Partial Summary Judgment and the Defendants' Motion for Summary Judgment. As will be set forth in detail below, the Plaintiff's Motion for Partial Summary Judgment is **GRANTED** and, consequently, the Defendants' Motion for Summary Judgment is **DENIED.**

The Plaintiff Troy LeBoeuf, a Louisiana citizen, is an employee of Romero Brothers Oil Exchange, Inc. (Romero). While driving a vehicle owned by Romero, LeBoeuf was involved in a collision with a vehicle owned and operated by Nolton Joseph LaFleur. The accident occurred in Chambers County, Texas. After receiving the liability limits of LaFleur's automobile insurance, LeBoeuf commenced this diversity action seeking to recover benefits under the underinsured motorist portion of Romero's insurance provided by Reliance National Indemnity Company (Reliance), a Pennsylvania corporation. Reliance was formerly known as Planet Insurance Company.

LeBoeuf seeks partial summary judgment on the issue of coverage, contending Romero accepted the uninsured/underinsured motorist (UM) coverage offered by Reliance. Alternatively, LeBoeuf argues that the form executed by Romero was ineffective to waive the statutorily mandated UM coverage; thus, the policy provides UM coverage. Reliance likewise seeks summary judgment, contending Romero effectively rejected UM coverage.

■■■ Like many other states, Louisiana [1] requires automobile liability insurance policies to include uninsured or underinsured motorist coverage unless the insured specifically rejects such coverage. Section 1406 of the Louisiana Insurance Code provides:

(D)(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, ... for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death[,] resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits....

(D)(1)(a)(ii) After September 1, 1987, such rejection or selection of lower limits shall be made on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative....

La.Rev.Stat.Ann. § 22:1406. Thus, under Louisiana law, UM coverage is automatically included in every automobile liability policy, notwithstanding the policy language, the intentions of the parties, or the presence or absence of a premium charge or payment, unless the insured effectively rejects UM coverage or selects lower limits. *Roger v. Estate of Moulton,* 513 So.2d 1126, 1130, 1131–32 (La.1987).

The UM rejection/acceptance form provided by Reliance is set forth below:

---

### ENDORSEMENT # 6

This endorsement, effective 12:01 a.m., 10/29/92 forms a part of Pol. No. NKA201542902 issued to Romero Brothers Oil Exchange, Inc. by Planet Insurance Company.

### UNINSURED/UNDERINSURED MOTORISTS REJECTION/ACCEPTANCE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the following limits of Uninsured/Underinsured Motorists have been selected and accepted by the named insured:

| | | |
|---|---|---|
| A. | $ | Bodily Injury |
| B. | $ 1,000,000 | Bodily Injury |
| | $ 10,000 | Property Damage |
| C. | $ . | (Optional) |
| D. | REJECTED | |

---

The form included signature lines for the insured and a representative of the insurer. The copies provided to the Court of the form executed by Romero show the initials of Robert Romero, Romero's president, between and to the left of options A and B, and a

---

1. In this diversity action, Texas choice of law rules determine the applicable law. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *W.R. Grace & Co. v. Continental Casualty Co.,* 896 F.2d 865 (5th Cir. 1990). Under Texas law, the law of the state with the most significant relationship to the particular substantive issue in question governs its resolution. *E.g., Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984); *Hull & Co., Inc. v. Chandler,* 889 S.W.2d 513, 517 (Tex.Ct.

App.—Houston [14th Dist.] 1994). While the accident occurred in Texas, the issue in this case is the interpretation and application of an insurance policy issued in Louisiana to a Louisiana citizen covering vehicles principally garaged in Louisiana. Clearly, Louisiana has the most significant relationship to and interest in the resolution of this issue; thus, Louisiana law applies. The Court notes that the Plaintiff and the Defendants rely exclusively on Louisiana law in their motions.

typed "X" on the left side of option D. According to Mr. Romero's affidavit, he mistakenly checked option B, and used correction fluid to erase the mark. He placed his initials beside option B to signify that he had made the correction. He then marked option D, rejecting the UM coverage.

Reliance contends the form executed by Romero is an effective rejection of UM coverage; thus, there is no UM coverage included in Romero's policy, and Reliance is entitled to summary judgment against LeBoeuf's claim. The Court disagrees. While it is apparent that Romero intended to reject UM coverage, this intent is insufficient under Louisiana law, because the form through which Romero attempted to reject the UM coverage is inadequate.[2]

 Because UM coverage is intended to "promote full recovery for innocent automobile accident victims . . ., the [UM] statute is to be liberally construed, such that statutory exceptions to the coverage requirement are interpreted strictly." *Tugwell v. State Farm Ins. Co.,* 609 So.2d 195, 197 (La.1992). The form used by the insurer must be sufficient to allow the insured to make an informed and meaningful selection from the three statutory options: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than the bodily injury limits in the policy; or (3) no UM coverage. *Id.*

 The insurer bears the burden of establishing that a rejection of UM coverage or a selection of lower limits has been legally perfected. *Tugwell,* 609 So.2d at 197; *Henson v. Safeco Ins. Cos.,* 585 So.2d 534, 538 (La.1991). Regardless of the insured's intention, a writing that does not provide the necessary information to allow a meaningful selection from the three options is ineffective. *Tugwell,* 609 So.2d at 197. An ambiguous rejection is ineffective, as is an unambiguous rejection on an improper form. *Dibos v. Bill Watson Ford, Inc.,* 622 So.2d 677, 679 (La.Ct. App.1993). Applying these standards, the Court concludes the form used by Reliance in this case is improper because it does not allow for an *informed* selection of UM coverage in amounts lower than the bodily injury limits of the policy.

In *Tugwell,* the Louisiana Supreme Court held that the form used by the insurer must include a space in which the insured could choose lower limits of UM coverage, and must also "make sure the insured is informed of such an option." 609 So.2d at 198–99. In reaching this conclusion, the court rejected the approach of the court of appeal in *Bertrand v. Shelter General Ins. Co.,* 571 So.2d 861 (La.Ct.App.1990). In *Bertrand,* the court of appeal concluded that an insurance application that asked whether the insured wanted UM coverage and whether the insured wanted UM limits equal to bodily injury limits and provided blank spaces adjacent to categories of coverage to be filled with the applicant's requested amounts of coverage satisfied the statutory requirements. *Id.* at 862. The court rejected the argument that the application was invalid because it did not inform the applicant of his option to select UM coverage in lower amounts. Because the applicant in *Bertrand* had answered "no" to both UM questions on the application and did not include any coverage amount in the UM blank, the court concluded the applicant validly rejected UM coverage; thus, there was no need for the insurer to inform the applicant of the option to select UM coverage in lower limits. *Id.* at 865–66.

The Louisiana Supreme Court specifically disavowed this analysis in *Tugwell,* stating that

[i]mplicit in the statute's requirement that the insurer make available to the insured the option of selecting lower limits is the idea that the insured be made aware of that option. [The] requirement that the insured be given the option of selecting lower limits would be empty protection indeed if the insurer were not required to make sure the insured is informed of such an option.

*Tugwell,* 609 So.2d at 199. These requirements apply even in cases where UM cover-

---

2. Because the Court concludes the form used by Reliance is ineffective, the Court does not consider the other arguments raised by LeBoeuf.

age has been rejected. *Id.* at 199 n. 6. The requirement that the insured be informed of his option to select lower limits

> can be accomplished in several ways. For example, the insurer can require the insured to acknowledge in writing that he has been informed of the options; or, the application itself can be set up in such a way through the use of blanks and boxes that it is apparent to the reasonable person that he has the option of selecting any lower limit he chooses.

*Tugwell,* 609 So.2d at 199.

Reliance argues that option C satisfies this requirement, because no dollar amount is filled in, and the word "optional" written by the blank line "further reinforc[es] the notion that the insured had the option to select different limits of UM coverage." The Court disagrees. Had Reliance's form elsewhere informed Romero that it could accept UM coverage in amounts lower than its bodily injury liability limits, it may be that the word "optional" placed after a blank line would have reinforced the option to select lower limits. Similarly, had the form included more information (if, for example, after the blank line, the form stated "choose a lower limit"), it may be that the form would have adequately informed the insured of his options. However, the form included no information about selecting lower limits; thus, there was no notion for the word "optional" to reinforce.

Without more, a blank line with "optional" written beside it simply does not make it apparent to the insured that he may select UM coverage in lower limits of his choosing. For example, by comparing option C to options A and B on Reliance's form, the word "optional" could reasonably be interpreted as referring to the type of insurance (property damage or bodily injury), rather than to the amount of coverage. Thus, the form is ambiguous at best, and simply does not inform the insured of his options. Therefore, given the complete absence of *any* information about the insured's options with regard to UM coverage, and specifically the form's failure to provide information regarding the insured's right to choose lower limits, the Reliance form did not provide Romero with the opportunity to make a meaningful selection of his UM options. Accordingly, Reliance's form is ineffective, and Romero's attempted rejection of UM coverage is likewise ineffective. *See, e.g., Carter v. Baham,* 649 So.2d 967, 968 (La.1995) (where the form by which the insured attempted to reject UM coverage did not meet the legal requirements for an effective rejection, rejection was ineffective); *Thomason v. City of New Orleans,* 650 So.2d 1247, 1248 (La.Ct.App.1995) (affirming grant of summary judgment in favor of insured even though insured had executed form rejecting coverage, because form was ambiguous and therefore invalid). To conclude otherwise would render meaningless the requirement that the insurer inform the insured of his option to select UM coverage in lower limits.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not be granted if the evidence indicates that a reasonable fact finder could find in favor of the non-moving party. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As noted above, the insurer bears the burden of establishing that the insured effectively rejected UM coverage or selected lower limits. *Tugwell,* 609 So.2d at 197. Reliance, therefore, is entitled to summary judgment only if there is no question of fact that Romero effectively rejected UM coverage. However, the only evidence of an effective rejection offered by Reliance in support of its motion is the form the Court has determined to be ineffective as a matter of law. Therefore, because Reliance has failed to establish that Romero effectively rejected UM coverage, Reliance cannot prevail on its summary judgment motion.

Conversely, because LeBoeuf has established that the form executed by Romero is invalid and Reliance has presented no other evidence that creates a question of fact as to

whether Romero effectively rejected UM coverage, LeBoeuf is entitled to summary judgment in his favor on the issue of coverage. Accordingly, by operation of Louisiana's UM statute, Romero's policy includes UM coverage in the amount of $1,000,000, the limit of the policy's bodily injury liability coverage. La.Rev.Stat.Ann. § 22:1406(D)(1)(a)(i); *Tugwell,* 609 So.2d at 197–98 (UM coverage in an amount equal to liability limits is automatic unless such coverage is validly rejected or lower limits are selected).

The Court recognizes the apparent·unfairness and unreasonableness of this decision in view of Mr. Romero's affidavit establishing that he expressly and deliberately rejected UM coverage. However, the Court is constrained to apply Louisiana law to this dispute, and Louisiana law clearly and unequivocally provides that an attempt to reject UM coverage is ineffective if the form upon which the rejection is made does not strictly comply with statutory and case law requirements. *See Thomason,* 650 So.2d at 1249 (an affidavit from an insured stating he knowingly and ·intentionally rejected UM coverage "cannot supply validity to a rejection form that was invalid under the UM statute."). Because the form supplied by Reliance was invalid under Louisiana law, this Court has no choice but to conclude that Romero did not effectively reject UM coverage.

3. While the Court generally does not address itself to correspondence from counsel, the Court finds it necessary in this case to address a letter from counsel for Reliance received on January 23, 1996. In the letter counsel kindly brought to the attention of the Clerk of Court that potentially dispositive motions had been pending in this case for approximately three months. Counsel explained that the parties had postponed engaging in discovery, and, as the trial date was approaching, a ruling on the motions could save the parties the expenses associated with discovery.

The Court is genuinely sympathetic to counsel's concerns and appreciates counsel's desire to minimize his client's expenses. Nonetheless, the Court notes that the filing of a motion, even a dispositive motion, does not suspend deadlines established in the case. This Court has one of the busiest dockets in the country. In fact, for the third straight calendar year, the number of new filings in 1995 in this District approached

Accordingly, Reliance's Motion for Summary Judgment is hereby **DENIED,** and LeBoeuf's Motion for·Partial Summary Judgment on the issue of UM coverage is hereby **GRANTED.** This case will proceed to trial as scheduled [3] on the issues of causation and damages only. The Court will not permit any interlocutory appeals of its coverage ruling; rather, an appeal of all the issues in the case may be taken after the jury decides the remaining issues.

**IT IS SO ORDERED.**

1,000. The Court handles this staggering caseload extremely efficiently, and each year closes nearly as many cases as it opens. However, given the volume of motions and other matters the Court must address, there is quite obviously some period of delay between when a motion is ripe for consideration and when the Court can actually consider it.

The Court recognizes that the delays involved in litigating a case in any forum can create problems for the attorney, and the Court can offer no real solutions. However, the Court notes that an attorney's ultimate obligation is to protect the interests of his client. If a motion has not been ruled upon by a court, the attorney must take whatever actions are necessary to prepare the case for trial or otherwise fulfill his obligation to his client. While protecting a client may require incurring expenses that, in retrospect, may seem to have been unnecessary, this is simply an unfortunate reality of modern litigation.